UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Battle Foam, LLC,
      Plaintiff

      v.                                    Civil No. 10-cv-116-SM
                                            Opinion No. 2010 DNH 108
Bryan Wade, d/b/a Outrider Hobbies,
      Defendant

**O R D E R**

        Plaintiff, Battle Foam, LLC, is an Arizona limited liability
company that "specializes in laser cutting foam for carrying
cases sold in the war gaming market under the mark, BATTLE FOAM,
through [its] website www.battlefoam.com."  Complaint (document
no. 1) at 1.  It brings this action against Bryan Wade, d/b/a
Outrider Hobbies, seeking preliminary and permanent injunctive
relief, as well as damages for alleged acts of trademark
infringement, unfair competition, false designation of origin,
trademark dilution, deceptive trade practices, injury to business
reputation, and misappropriation of trade secrets.  Wade is also
a resident of Arizona.

        While the complaint is replete with seeming hyperbole,
including allegations of industrial espionage, unauthorized
access to Battle Foam's manufacturing facility, and theft of
trade secrets, it contains relatively few concrete factual

assertions.  Nevertheless, it is clear that Battle Foam's claims

rest, largely, on the following proposition:

> Outrider Hobbies and Bryan Wade are trying to ride off
> of the good will of the BATTLE FOAM mark in adopting a
> similar military oriented FOAM CORPS mark, are passing
> their products off as Battle Foam products, and have
> taken other steps to improperly obtain trade secrets
> from Battle Foam's innovative foam laser cutting
> technology.

Plaintiff's opposition memorandum (document no. 6) at 1-2.  To be

sure, Battle Foam has submitted what it claims is evidence of

consumer confusion between the parties' respective marks.  But,

as discussed below, that evidence is of questionable

authenticity.


Wade, proceeding pro se, has filed a motion to dismiss for

lack of personal jurisdiction and improper venue.  In the

alternative, he moves the court to transfer venue to the District

of Arizona.  Plaintiff objects and asserts that this court may

properly exercise specific personal jurisdiction over Wade.


### Standard of Review

When personal jurisdiction is contested, the plaintiff bears

the burden of establishing that the court has such jurisdiction.

See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995);

Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8

(1st Cir. 1986).  Allegations of jurisdictional facts are
construed in the plaintiff's favor, <u>see</u> <u>Buckley v. Bourdon</u>, 682
F. Supp. 95, 98 (D.N.H. 1988), and if, as here, the court
proceeds based upon the written submissions of the parties
without an evidentiary hearing, the plaintiff need only make a
<u>prima</u> <u>facie</u> showing that jurisdiction exists.  <u>See</u> <u>Kowalski</u>, 787
F.2d at 8; <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 674-75
(1st Cir. 1992).

     Nevertheless, the plaintiff's demonstration of personal
jurisdiction must be based on <u>specific facts</u> set forth <u>in the
record</u> in order to defeat a defendant's motion to dismiss.  <u>See</u>
<u>TicketMaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir.
1994).  <u>See also</u> <u>Jet Wine & Spirits, Inc. v. Bacardi & Co.</u>, 298
F.3d 1, 8 (1st Cir. 2002) ("Although the burden of proof is
light, [plaintiff] may not rely on the mere allegations of its
complaint, but must point to specific facts in the record that
support those allegations.").  And, "in reviewing the record
before it, a court 'may consider pleadings, affidavits, and other
evidentiary materials without converting the motion to dismiss to
a motion for summary judgment.'"  <u>VDI Technologies v. Price</u>, 781
F. Supp. 85, 87 (D.N.H. 1991) (quoting <u>Lex Computer & Management
Corp. v. Eslinger & Pelton, P.C.</u>, 676 F. Supp. 399, 402 (D.N.H.
1987)).

Because at least some of Battle Foam's claims arise under
federal law, the court's inquiry into whether it may exercise
personal jurisdiction over Wade is necessarily distinct from the
inquiry applicable in diversity cases.  See generally United
Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080 (1st Cir.
1992).  In a federal question case, "the constitutional limits of
the court's personal jurisdiction are fixed . . . not by the
Fourteenth Amendment but by the Due Process Clause of the Fifth
Amendment."  Id. at 1085.  This distinction is significant
"because under the Fifth Amendment, a plaintiff need only show
that the defendant has adequate contacts with the United States
as a whole, rather than with a particular state."  United States
v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).
Importantly, however, "the plaintiff must still ground its
service of process in a federal statute or civil rule."  Id.  In
other words, Battle Foam must demonstrate either: (1) that a
federal statute invoked in its complaint authorizes nation-wide
service of process; or (2) that it served Wade with a copy of its
complaint in a way that comports with the requirements of Rule 4
of the Federal Rules of Civil Procedure.

Here, Battle Foam does not claim that any of the federal
statutes under which it is proceeding authorizes national service
of process.  Consequently, the Federal Rules of Civil Procedure

4

provide that it must demonstrate that Wade was served in a manner
consistent with New Hampshire's individual long-arm statute.  <u>See</u>
Fed. R. Civ. P. 4(e).  That long-arm statute, RSA 510:4,
authorizes jurisdiction over foreign defendants to the full
extent permitted by federal law.  <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1388.
Stated another way, New Hampshire's long-arm statute is
coextensive with the outer limits of due process protection under
the United States Constitution.  Accordingly, the court need only
determine whether the exercise of personal jurisdiction over Wade
would comport with federal constitutional guarantees.

> Hence, our analysis comes full circle.  When
> insufficient statutory authorization for
> extraterritorial service exists, Rule 4(e) allows such
> service "only to the extent permitted by the law of the
> state in which the district court sits."  It follows
> that, absent a federal statute permitting service of
> process on [defendant] . . . , our threshold inquiry
> must focus on [state] law concerning personal
> jurisdiction, notwithstanding that this is a federal
> question case.  And, because state law is subject to
> Fourteenth Amendment limitations, <u>the minimum contacts</u>
> <u>doctrine</u>, while imposing no direct state-by-state
> constraint on a federal court in a federal question
> case, <u>acts indirectly as a governing mechanism for the</u>
> <u>exercise of personal jurisdiction</u>.

<u>United Elec. Workers</u>, 960 F.2d at 1086 (emphasis supplied)
(citation omitted).


    Ultimately, then, as in a diversity case, Battle Foam must
still show that Wade has "certain minimum contacts with the forum

such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (citation and internal punctuation omitted), and that Wade's conduct bears such a "substantial connection with the forum State" that he "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The court of appeals for this circuit has summarized those jurisdictional requirements as follows:

> To begin, the defendant must have purposeful "minimum contacts" with the state. Further, the exercise of jurisdiction must be "reasonable" under the circumstances. The third requirement . . . is that the plaintiff's claims be related to the defendant's contacts.

Cambridge Literary Props. v. W. Goebel Porzellanfabrik, 295 F.3d 59, 63 (1st Cir. 2002) (citation omitted). See also Sawtelle, 70 F.3d at 1389-95 (describing the three essential jurisdictional elements as "relatedness," "purposeful availment," and the so-called "Gestalt factors").

## Background

Battle Foam is an Arizona limited liability company that specializes in laser cutting foam for carrying cases that are sold in the war gaming miniature market. It sells those foam

products under the mark BATTLE FOAM and does business throughout the United States.  Here in New Hampshire, it sells its products through several gaming and hobby shops.  It registered the trademark "BATTLE FOAM" in 2009 and the "mark consists of standard characters, without claim to any particular font, style, size, or color."  Complaint, Exhibit A (document no. 1-2).  It has also filed a patent application for a "Method and Apparatus for Fabricating a Foam Container with a Computer Controlled Laser Cutting Device."  See Complaint, Exhibit C (document no. 1-4).

Defendant, Bryan Wade, resides in Queens Creek, Arizona.  He is employed as a full-time customer service representative and also works as a part-time process server.  Additionally, he does business under the name "Outrider Hobbies" and maintains a Web site with the same second level domain name.  Like Battle Foam, Wade produces foam inserts for carrying/storage cases, which are used by players and collectors in the war gaming miniature market.  Although the record is not entirely clear on this point, it appears that Wade sells his foam products primarily through his Web site, but a few retail stores in Arizona, Pennsylvania, and Texas also carry his products.  Wade denies that he has ever conducted business with any resident(s) of New Hampshire and says he has never shipped any of his foam products or directed any marketing or promotional material into this forum.

7

With respect to the merits, in support of its assertion that "Foam Corps" is deceptively similar to its "Battle Foam" mark and, therefore, is causing confusion among the consuming public, Battle Foam submitted what it says is an e-mail it received from a man named Jim Kavourias:

> My name is Jim and I'm writing you because I have run into a problem.  I recently got some custom cut foam for my army transport.  When my foam arrived I was surprised to see that the quality of the foam was much less then what you post on your site.  I ordered several troop trays and I am mainly upset with the quality of the glue and overall design.  When I placed my order I spoke to a man named Brian from foam corps. He explained to me that "all battlefoam trays" are the same quality and that my order would come out perfect. At this point I am completely baffled since I had no idea that these are not battlefoam trays.  Your company needs to place some kind of disclaimer pointing this out to us customers.  All foam looks the same to me and when other companies are telling us that their trays are the same and that they sell battlefoam it makes things very hard.  I tried to call the company I bought it [from] but the sales guy told me to contact you.
>
> Please help as I feel cheated here and foam corps or battlefoam or whatever needs to make things right.

Complaint, Exhibit E (document no. 1-6).

Wade, however, has uncovered evidence that calls into question the authenticity of that correspondence.  In his affidavit, Wade testified to the following:

> Neither I nor Outrider Hobbies have ever conducted any business with a "Jim Kavourias," the confused customer whose e-mail is attached to Plaintiff's Complaint as

8

Exhibit E.   Furthermore, there are no records in the
Outrider Hobbies Online Store database indicating that
Jim Kavourias ever purchased any products from Outrider
Hobbies or contacted me or Outrider Hobbies.

Despite my attempts to contact Mr. Kavourias through
the email provided, jkavourias@aol.com, I have never
received a response from Mr. Kavourias or an e-mail
indicating that my attempt to e-mail him was
unsuccessful.

On April 11, 2010, while searching the internet in an
attempt to locate Jim Kavourias by other means, I found
the names "Jim Kavourias" and "Jim K." on the website
for Diablo Bats, another business of Romeo Filip [the
registered agent and a principal owner of Battle Foam].
Jim Kavourias was listed as someone that uses bats
manufactured by Diablo Bats and Jim K. had provided a
testimonial discussing his use of the bats.  On April
12, 2010, Plaintiffs attorney was made aware of these
facts regarding Jim Kavourias.  When I conducted
another search on April 15, 2010, I found that the name
"Jim Kavourias" had been removed from the Diablo Bats
website.

True Examples of the original website as found on April
11th, 2010, the changed website as found on April 15th,
2010, and a cached, or saved, version of the original
page from April 7, 2010 as found through google.com on
April 16th, 2010 are included as Defendant's Exhibit A.

A True Example of the email, jkavourias@aol.com, being
associated with Jim Kavourias, a minor league baseball
player for the Florida Marlins is included as
Defendant's Exhibit B.  This example was retrieved from
the internet on May 14th, 2010.


Declaration of Bryan Wade (document no. 8-1) at para. 3.[1]

---

[1]     The Arizona Corporation Commission reports that Battle
Foam, LLC has two members: Romeo Filip and Jama Filip.  The Web
site for Diablo Bats(www.diablobats.com/about_ash_maple_bats.htm)
lists Romeo Filip as the company's president (though, perhaps,
that is a reference to Filip's role as president of "Filip,
Inc.," formerly "Big Bats, Inc.").  See Arizona Corporate File
no. 1059594-6, available at http://starpas.azcc.gov/scripts/

It is, of course, possible that the fifth round pick of the Florida Marlins in the 2000 draft is both a fan of Diablo bats and a collector in the war gaming miniature market who is familiar with Battle Foam's products.  It is also possible that the baseball player who provided the testimonial for Diablo bats and the confused customer who contacted Battle Foam simply share the same name.  A third possibility is decidedly less savory and, hopefully, is not the case here.

## Discussion

The reason Battle Foam decided to sue Wade in this forum - nearly 2,700 miles from both its principal place of business and Wade's residence - is unclear.  This, however, is undeniable: short of filing in the District of Alaska, Maine, or Puerto Rico, Battle Foam would have been hard pressed to find a more distant and inconvenient federal forum in which to require Wade to appear (the same is true for any potential witnesses - nearly all of whom one might reasonably infer are beyond this court's civil subpoena power, including Mr. Kavourias).  Wade believes this suit and, in particular, Battle Foam's choice of forum, are part of a larger, ongoing pattern of harassment that he says has been directed toward him.

---

cgiip.exe/WService=wsbroker1/names-detail.p?name-id=10595946&type=CORPORATION

But, of course, Battle Foam's subjective motivations are, at least at this juncture, immaterial to the legal issues before the court, as are the merits of its questionable infringement claims against Wade. For now, the court must focus on whether it may, consistent with the Due Process Clause of the Fourteenth Amendment, exercise personal jurisdiction over Wade.

I.   Wade's Ability to Appear "on Behalf of" Outrider Hobbies.

As a preliminary matter, Battle Foam objects to Wade "representing" Outrider Hobbies, asserting that it is a "de facto corporation," and pointing out that pro se defendants may not represent corporate entities. Plaintiff's memorandum (document no. 6) at 4-5. But, Battle Foam fails to explain precisely what it means by "de facto corporation," nor does it discuss the legal significance of such an entity.

Outrider Hobbies is the name under which Wade transacts business. It is not a corporate entity or unincorporated association. See Declaration of Bryan Wade (document no. 8-1) at 8. Consequently, Wade is the only defendant to this action and Battle Foam's assertion that he cannot "represent" or "appear on behalf of" Outrider Hobbies is without merit. See 28 U.S.C. § 1654. See also Centrifugal Force, Inc. v. Softnet Communication, Inc., 2009 WL 1059647, 1 (S.D.N.Y. 2009) ("Since PowerLine

11

Computers is simply the alter ego of Staszulonek (and thus an
unnecessary party), Staszulonek may appear under both his actual
name and his 'd/b/a.'  Although both 'Staszulonek' and
'PowerLine' are used in this opinion, the actual defendant in
interest is Staszulonek."); <u>Microsoft Corp. v. Moss</u>, 2007 WL
2782503, 1 (N.D.Ga. 2007) ("A corporation cannot represent itself
in court without an attorney, and failure to comply with this
rule can result in default being entered against the corporate
party. . . . However, Earl, Tony, and Daphne Moss remain as
defendants, individually and collectively d/b/a Affordable
Computers, and, as individuals may proceed pro se.").


II.   <u>Personal Jurisdiction over Wade</u>.

     Turning to the jurisdictional issue, it is plain that Battle
Foam has not carried its burden of making even a <u>prima</u> <u>facie</u>
showing that this court may properly exercise personal
jurisdiction over Wade.  The thrust of Battle Foam's argument is
this: that Wade has "sufficient minimum contacts [with this
forum] mainly because [he] own[s] and operate[s] an online
website that customers in New Hampshire and across the United
States can easily access and directly purchase the goods in
question."  Plaintiff's memorandum at 2.  <u>See also</u> <u>id</u>. at 5 ("The
www.outriderhobbies.com website and online store selling the FOAM
CORPS products are clearly accessible from New Hampshire and it

is easy for a business or resident of New Hampshire to log on to this site and purchase goods from the website itself.  Therefore, Defendants are purposefully availing themselves within this forum and are deriving the benefits associated with selling online to all residents of the United States, including those in New Hampshire.").

In other words, Battle Foam urges this court to exercise personal jurisdiction over Wade because he operates a Web site through which residents of New Hampshire may, if they so choose, purchase goods.  But, Battle Foam has offered no evidence of any such purchases.  Nor does it have any evidence that Wade has shipped any goods into this forum, or that he has transacted business of any sort with even a single New Hampshire resident. In Battle Foam's view, merely operating a retail Web site that is accessible by residents of New Hampshire is, without more, sufficient to establish the requisite "minimum contacts" with this forum.

Plainly, however, its position is incorrect.  If a federal court were to adopt Battle Foam's view of "minimum contacts," it would undermine the concepts of due process and fundamental fairness that are the linchpins to the personal jurisdiction

analysis.  As the Court of Appeals for the Third Circuit has
succinctly observed:

> [T]he mere operation of a commercially interactive web
> site should not subject the operator to jurisdiction
> anywhere in the world.  Rather, there must be evidence
> that the defendant "purposefully availed" itself of
> conducting activity in the forum state, by directly
> targeting its web site to the state, knowingly
> interacting with residents of the forum state via its
> web site, or through sufficient other related contacts.

Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir.
2003).  As noted above, Battle Foam has pointed to no evidence
suggesting that Wade has purposefully availed himself of
conducting activity in New Hampshire.

In response to Battle Foam's expansive view of personal
jurisdiction and its largely unsupported factual assertions, Wade
has submitted an affidavit in which he states that:

> Outrider Hobbies has never conducted any business in
> the state of New Hampshire.  No customers from New
> Hampshire have purchased any items from me or Outrider
> Hobbies.  Upon examination of my records, neither I nor
> Outrider Hobbies have ever sent any promotional
> materials to any retail or wholesale customers in the
> state of New Hampshire.  A search of my records
> indicates that I have only done business in Arizona,
> Pennsylvania, Texas, Illinois, Ohio, Alabama, Colorado,
> New York, and Michigan.

Declaration of Bryan Wade, at para. 2.  Little more need be said
on the matter and no complex or detailed legal analysis is

necessary.  Given Wade's unrebutted sworn testimony, it is plain
that this court lacks personal jurisdiction over him.


                          **Conclusion**

     Battle Foam bears the burden of establishing that this court
may properly exercise personal jurisdiction over Wade.  It has
failed to point to <u>any</u> evidence even remotely suggesting that
Wade has the minimum contacts with this forum necessary to
support this court's exercise of personal jurisdiction over him.
Accordingly, Wade's motion to dismiss is granted.


     Parenthetically, the court suggests that prior to refiling
this complaint in another forum, Battle Foam and its counsel
might give serious consideration to the legal claims they are
advancing, as well as the factual allegations leveled against
Wade to ensure that they are supported by legal authority and an
evidentiary basis (e.g., allegations that Wade "intentionally
directed [his] tortious activities toward New Hampshire,"
Complaint at para. 6; that Wade and Outrider Hobbies, "using
Battle Foam's misappropriated trade secrets, have introduced
products of inferior quality to the marketplace under the FOAM
CORPS mark that consumers believe to be Battle Foam products,"
<u>id</u>. at para. 23; that Wade "surreptitiously obtained access to
and/or information from Battle Foam's industrial facility and

                             15

misappropriated trade secrets . . . which are the subject of Battle Foam's '410 patent application," <u>id</u>. at para 21; etc.).

As currently developed, the record in this case contains some suggestion that Battle Foam's evidence of consumer confusion regarding the parties' respective marks may be suspect. And, there is a reasonable basis to question why this suit was filed in this forum. At a minimum, a bit of sober reflection by Battle Foam and its counsel would seem to be in order. <u>See generally</u> Fed. R. Civ. P. 11(b).

For the foregoing reasons, as well as those set forth in Wade's submissions, defendant's motion to dismiss for lack of personal jurisdiction (document no. 5) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

June 29, 2010

cc: Scott A. Daniels, Esq.
    Bryan Wade, <u>pro se</u>